United States District Court
Southern District of Texas
**ENTERED**
May 24, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ZOILO MARTINEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-740 |
| | § | |
| **ANDREW SAUL,** *Commissioner of* | § | |
| *Social Security Administration*, | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND RECOMMENDATION**

Plaintiff Zoilo Martinez ("Plaintiff") filed this suit against Defendant Andrew Saul ("Commissioner") seeking review of the denial of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d)(1)(A). (Dkt. No. 1.) Pending before the Court[1] are the parties' cross-motions for summary judgment. (Dkt. Nos. 18 & 25.) Based on the briefing, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Commissioner's Motion for Summary Judgment be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

Plaintiff is a 50-year-old man who served in the Navy and subsequently worked as a mail carrier for the U.S. Postal Service. (R. at 365-366, 450.)[2] Plaintiff experienced a left eye injury in 1991 and currently suffers from various other health conditions such as back pain and diabetes.

---

[1] On July 1, 2020, the District Judge referred this case to the undersigned for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 9.)

[2] The Administrative Record in this case can be found at Dkt. Nos. 11, 12, & 13.

(R. at 428-431, 1569.) He has been found disabled by Veterans Affairs ("VA") and is receiving benefits. (R. at 2026-2033.)

On February 16, 2016, Plaintiff filed an application under Title II of the Social Security Act, seeking benefits beginning on July 1, 2009 for heart failure, depression, anxiety, degenerative disc disease, and other back problems. (R. at 450-451, 641.) The Social Security Administration denied Plaintiff's claims initially on June 17, 2016 and again on reconsideration on September 1, 2016. (R. at 508, 518.) On March 2, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 521.) ALJ Caroline Beers held a hearing on May 22, 2018, but then postponed the hearing so Plaintiff could obtain counsel. (R. at 401-419.) The ALJ held a second hearing on January 17, 2019, during which Plaintiff was represented by an attorney. (R. at 421-449.) Plaintiff testified at the hearing. (R. at 440-443.) Giao Hoang, a medical expert ("ME"), and Charles Poor, a vocational expert ("VE"), also testified. (R. at 427-440, 443-448.)

On March 5, 2019, the ALJ denied Plaintiff's application for benefits, finding Plaintiff not disabled at Step Five of the evaluation process. (R. at 13-25.)[3] At Step One, the ALJ found Plaintiff did not engage in substantial gainful activity between his alleged onset date, July 1, 2009, and his date last insured, December 31, 2014. (R. at 16.)[4] At Step Two, the ALJ found Plaintiff had the

---

[3] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

[4] Plaintiff argues the relevant time period in this case is July 1, 2009—his alleged onset date—through March 5, 2019—the date of the ALJ's decision—because "the ALJ specifically states that her RFC finding refers to the period through the date of the decision." (Dkt. No. 25 at 5.) This is both factually and legally incorrect. The ALJ never stated she made findings through the date of her decision. (*See* R. at 13-25.) In fact, she repeatedly stated she was evaluating

following severe impairments: lumbar and thoracic degenerative disc disease, foraminal stenosis in the lumbar spine, depression, anxiety, obesity, and cardiomyopathy. (R. at 16.) The ALJ also found that Plaintiff had tinnitus, sleep apnea, cataracts, and posttraumatic stress disorder, but that these impairments were not severe. (R. at 16.) At Step Three, the ALJ found Plaintiff's impairments or combination of impairments did not rise to the level of severity of impairments in the listings associated with chronic heart failure (Listing 4.02), coronary artery disease (Listing 4.04), or mental health disorders (Listings 12.04 and 12.06). (R. at 16-18.) The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work with certain limitations, as described below. (R. at 18-23.) At Step Four, the ALJ found Plaintiff was not capable of performing his past relevant work as a mail carrier. (R. at 23.) At Step Five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as an optical goods worker, jewelry bench hand, and dowel inspector. (R. at 23-24.) Therefore, Plaintiff was not disabled as defined under the Social Security Act during the relevant time period. (R. at 24-25.)[5]

Plaintiff appealed the ALJ's decision to the Appeals Council and, on January 4, 2020, the Appeals Council denied Plaintiff's request for review. (R. at 1-4.) The ALJ's decision, therefore, represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if . . . the [Appeals] Council

---

Plaintiff's disability through December 31, 2014 (*see, e.g.*, R. at 14, 16, 19, 21-25) and even explained this to Plaintiff at the hearings (R. at 404-405, 427). In any event, a claimant applying for disability under Title II must establish his disability began on or before the date he was last insured. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *see also Luckey v. Astrue*, 458 F. App'x 322, 323 n.1 (5th Cir. 2011). The relevant time period, therefore, is July 1, 2009 to December 31, 2014.

[5] Plaintiff had previously applied for disability and disability insurance benefits for an overlapping time period, but his application was denied. (R. at 474-496.)

denies the request for review, the ALJ's opinion becomes the final decision."). On March 2, 2020, Plaintiff filed this civil action under 42 U.S.C. § 405(g). (Dkt. No. 1.) In the appeal, Plaintiff argues the ALJ erred by failing to properly consider his eye impairment. (Dkt. No. 25.)

## II.     STANDARD OF REVIEW

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822-23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the

Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

Summary judgment in social security cases, like others, is governed by Federal Rule of Civil Procedure 56. *See Temple v. Saul*, No. 19-CV-3320, 2020 WL 6075644, at *2 (S.D. Tex. Oct. 14, 2020). Under Rule 56, summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotations omitted).

### III. DISCUSSION

Plaintiff argues the ALJ improperly considered his left eye injury and associated cataracts, which he asserts resulted in blurry vision. (Dkt. No. 25 at 5-8.) According to Plaintiff, the ALJ erred by determining his cataracts were not severe at Step Two and by failing to incorporate related limitations into his RFC.[6] (*Id.* at 7.) Plaintiff points to his VA disability rating—which designated his eye injury as 30% disabling until March 16, 2017—in support of this argument. (*Id.*) Plaintiff asserts these errors were prejudicial because his eye injury limited the number of jobs he could perform, and therefore he should have been found disabled at Step Five. (*Id.* at 8.)

---

[6] RFC is a "determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).

Commissioner argues the ALJ did not err in considering Plaintiff's eye impairment for several reasons. (Dkt. No. 27 at 2-5.) In relevant part, Commissioner argues that Plaintiff's characterization of the medical records is misleading and that the evidence shows any blurry vision was related to allergies or diabetes rather than the injury or cataract. (*Id.* at 3.) Commissioner also argues that Plaintiff's VA ratings did not compel the ALJ to make certain findings because the VA uses different disability evaluation standards. (*Id.* at 4.) Moreover, the VA evaluator, Dr. Ann Katzenberger, found Plaintiff had excellent vision in both eyes and suffered no functional limitations from his eye injury. (*Id.* at 3-4.) Finally, Commissioner argues that even if the ALJ did err, Plaintiff has not established prejudice. (*Id.* at 4-5.) The Court agrees with Commissioner.

**A. The ALJ's Decision**

As described above, the ALJ found that Plaintiff had several severe and non-severe impairments, most relevantly that Plaintiff had non-severe cataracts. (R. at 16.) The ALJ determined Plaintiff's cataracts were not severe because they had been extracted as of March 16, 2017 and they did not "impose more than a slight limitation upon the claimant's ability to perform basic work-related activities." (R. at 16.) The ALJ also stated generally that "[t]o be a severe impairment[,] the medical evidence must establish more than a slight abnormality or combination of slight abnormalities that would have more than a minimal effect on an individual's ability to work." (R. at 16.) The ALJ then determined that none of Plaintiff's impairments met the listing requirements and that Plaintiff had the RFC to perform sedentary work with several specific limitations, none of which related to Plaintiff's vision or eye impairment. (R. at 16-18.)[7]

---

[7] The ALJ found that Plaintiff could not: climb ladders, ropes, or scaffolds; reach overhead bilaterally; be exposed to loud noises; work around unprotected heights or dangerous moving machinery; or engage in fast-paced production. (R. at 18.) The ALJ also found that Plaintiff could only occasionally: climb ramps and stairs; stoop, bend, balance, kneel, crouch, and crawl; and

In discussing the RFC findings, the ALJ stated she considered the entire record and all of Plaintiff's symptoms. (R. at 18-19.) The ALJ also discussed the VA's disability ratings, including the 30% eye-related rating which was reduced to 0% as of March 16, 2017. (R. at 20.) The ALJ referenced this VA rating and eye impairment a second time, referring to it as "pseudophakia traumatic and cortical cataract." (R. at 20.)[8] The ALJ considered the VA ratings but found them not determinative because the VA uses different disability standards. (R. at 20.) The ALJ ultimately found that Plaintiff's impairments could cause the alleged symptoms, but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. at 19.) Although Plaintiff could not perform his past work as a mail carrier, there were other jobs in the national economy that he could perform and therefore he was not disabled. (R. at 23-25.)

**B. Even Assuming The ALJ Erred At Step Two, Plaintiff Has Not Shown Prejudice.**

At Step Two of the evaluation process, the ALJ must determine whether a claimant has any severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quotations and alterations omitted). If the ALJ finds a claimant has any severe impairments, he must move on to

---

interact with supervisors, co-workers, or the general public. (R. at 18.) Finally, the ALJ found that Plaintiff could: sit and stand at will; understand, remember, and carry out only simple instructions; perform only simple and repetitive tasks; and maintain concentration for only two-hour periods. (R. at 18.)

[8] According to Stedman's Medical Dictionary, pseudophakia is "[a]n eye in which the natural lens is replaced with an intraocular lens."

the next steps in the evaluation process and eventually determine, before Step Four, what impact the claimant's severe and non-severe impairments have on his RFC. *See* 20 C.F.R. § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). Therefore, any error in failing to find an impairment severe at Step Two "is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe," proceeds past Step Two, and considers both severe and non-severe impairments in formulating the RFC. *McMillan v. Saul*, No. 18-CV-37, 2019 WL 4601862, at *4 (S.D. Tex. Sept. 20, 2019).

Here, Plaintiff argues the ALJ erred in finding that his cataracts were not severe because they were resolved as of March 16, 2017. (Dkt. No. 25 at 7.) The implication of this argument is that Plaintiff's cataracts were severe during the relevant time period *before* March 16, 2017 and that the ALJ applied the wrong severity standard at Step Two. (*See id.* (relying on *McMillan*, 2019 WL 4601862, at *5 in which the court found the ALJ misstated and misapplied the severity standard).) Even assuming the ALJ erred in applying the severity standard or in explaining the reasons for finding Plaintiff's cataracts not severe, these errors are only reversible if they resulted in prejudice. *See Taylor*, 706 F.3d at 603; *Murphy v. Berryhill*, No. 17-CV-1260, 2018 WL 4568808, at *14 (N.D. Tex. Sept. 24, 2018) ("[A]pplication of harmless error analysis is appropriate in cases where the ALJ proceeds past step two in the sequential evaluation process.") (collecting cases).[9] "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Murphy*, 2018 WL

---

[9] "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

4568808, at *14 (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). Plaintiff has failed to demonstrate he was prejudiced by any error.

First, the record shows Plaintiff's eye impairment was not severe during the relevant time period of July 1, 2009 to December 31, 2014. According to VA evaluations, Plaintiff's left eye injury stemmed from two potential events: injury from metal debris while in the Navy in August 1991 and head trauma from a car accident while on leave in October 1991. (R. at 1569.) As to the metal debris, doctors removed a "fine pin-point metallic foreign body . . . from the ocular surface without complication" and noted that "no corneal abrasion was present" after removal. (R. at 1569.) Plaintiff had 20/17 vision in the left eye immediately after removal. (R. at 1569.) As to the car accident, Plaintiff suffered trauma to the left side of his head from a dislodged rearview mirror. (R. at 1569-1570.) On November 21, 2000, Plaintiff had a cortical cataract removed from his left eye and replaced with an artificial lens, resulting in 20/20 vision. (R. at 1570.) In August 2007, Plaintiff was diagnosed with a posterior capsule opacity, a "common post-cataract surgery occurrence" causing gradual blurring, and a laser capsulotomy was performed. (R. at 1570, 1793-1796.) Plaintiff's vision was subsequently correctable to 20/20 in each eye. (R. at 1570.) These issues all occurred and were resolved before the relevant time period began.[10]

The eye-related treatment records from July 1, 2009 to December 31, 2014, the relevant time period, are essentially unremarkable. For example, Plaintiff went to the optometrist on January 13, 2011 because of blurred vision in his *right* eye. (R. at 1502-1505.) The physician noted

---

[10] Other eye-related issues before the relevant time period pertain to conjunctivitis or allergies. (*See* R. at 1783 (5/9/08); R. at 1781 (7/2/08); R. at 1775 (7/10/08); R. at 2091 (3/20/09).)

Plaintiff's left eye history but found Plaintiff to have 20/20 vision and full visual field in both eyes. (R. at 1502-1503.)[11] Other records likewise note Plaintiff's history of cataracts and the artificial lens in his left eye, but do not indicate any lingering symptoms caused by these issues.[12] This is true for the primary piece of medical evidence relied on by Plaintiff in this appeal—a doctor's visit on October 21, 2009 addressing his request for a public transit card—which only notes Plaintiff's eye history and does not contain any eye-related observations from that date. (R. at 2068-2070.) Finally, the medical records dated after December 31, 2014 do not speak to Plaintiff's eye condition during the relevant time period or are otherwise unremarkable.[13]

As to the VA rating associated with Plaintiff's eye injury, the VA uses different disability standards than the Social Security Administration and an ALJ is not required to rely on its ratings. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). It appears the VA here designated Plaintiff's eye impairment as 30% disabling because that was the minimum rating for cataracts and lens removal under its old standards, not because Plaintiff suffered from any vision impairment. (*See* R. at 2590-2591.) Moreover, in the previous ALJ's decision covering much of the relevant time period,[14] the ALJ also found that Plaintiff's left eye impairment was not severe and that his vision did not impose any functional limitations. (R. at 480, 484.) In fact, the ALJ

---

[11] In a visual field test dated January 28, 2011, Plaintiff had "a few missed points in the left eye" and the physician recommend a repeat. (R. at 1497.) It is not clear from the records or from Plaintiff's brief whether the repeat ever occurred.

[12] *See* R. at 1499-1501 (1/24/11); R. at 1484-1486 (2/17/11); R. at 1457-1458 (8/17/11); R. at 3454-3457 (9/24/13); R. at 3435-3438 (1/27/14); *see also* R. at 352 (1/20/12); R. at 1938 (2/17/12); R. at 1931 (3/20/12); R. at 100 (4/25/12); R. at 1920 (5/15/12); R. at 319 (7/3/12); R. at 1894 (1/18/13); R. at 1884 (2/6/13); R. at 1879 (4/11/13); R. at 1875 (5/9/13); R. at 1872 (6/21/13); R. at 1862 (12/2/13); R. at 1857 (4/1/14).

[13] *See* R. at 3222-3228 (5/12/15); R. at 3129-3133 (11/17/15); R. at 2954-2959 (6/22/16); R. at 2514-2519 (3/16/17); R. at 2743-2748 (3/7/18); R. at 3894-3900 (11/13/18).

[14] The previous ALJ's decision covered July 31, 2009 to August 12, 2011. (R. at 488.)

found Plaintiff had exaggerated symptoms during a visual field examination and noted the possibility of malingering. (R. at 486 n.3.)

The Court finds that substantial evidence supports the determination that Plaintiff's left eye impairment was not severe—as it could only be characterized as a slight abnormality not expected to impact his ability to work—and thus any error did not affect the ALJ's findings at Step Two. *See, e.g.*, *McFarland v. Saul*, No. 18-CV-711, 2019 WL 3927298, at *7 (N.D. Tex. Aug. 20, 2019) (finding any Step Two error made by the ALJ in evaluating plaintiff's affective disorder was "irrelevant because substantial medical evidence support[ed] the ALJ's finding that [p]laintiff [did] not have a severe affective disorder"); *Reliford v. Colvin*, No. 12-CV-1850, 2013 WL 1787650, at *12-13 (S.D. Tex. Apr. 25, 2013) (finding, despite any Step Two errors, that substantial evidence supported the ALJ's decision that plaintiff's foot pain and diabetes were not severe). The case is thus fundamentally distinguishable from *McMillan*, where the court remanded based on the ALJ's Step Two error because plaintiff's impairments were actually severe. *See McMillan*, 2019 WL 4601862, at *5.

Second, the ALJ did not ignore Plaintiff's eye impairment past Step Two. In discussing Plaintiff's RFC, the ALJ stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required under the regulations. (R. at 19.) The ALJ also referenced the eye impairment twice when discussing the VA ratings. (R. at 20.) Because the ALJ proceeded past Step Two and addressed Plaintiff's eye impairment in formulating the RFC, any Step Two error was harmless. *See, e.g.*, *Murphy*, 2018 WL 4568808, at *15 (finding Step Two error harmless because the ALJ considered the impact of plaintiff's severe and non-severe impairments throughout the disability analysis and therefore it was "inconceivable that [the ALJ] would have

reached a different conclusion" absent the error); *Factory v. Comm'r of Soc. Sec.*, No. 15-CV-731, 2017 WL 1177992, at *5 (E.D. Tex. Mar. 29, 2017) (finding any Step Two error harmless based on the ALJ's statement that he considered all of plaintiff's allegations, including those associated with non-severe impairments, in formulating the RFC).

Third, Plaintiff has not even attempted to show he suffered from functional limitations due to his eye impairment. In fact, the record demonstrates the opposite. On June 14, 2010, Dr. Katzenberger from the VA determined that, while Plaintiff did suffer a service-connected eye injury in 1991, his vision was "correctable to 20/20 in each eye with minimal spectacle correction" and that overall Plaintiff had "excellent vision in both eyes" after the cataract extraction in 2000. (R. at 1568-1573.) Dr. Katzenberger also determined that Plaintiff "suffer[ed] no functional limitation" associated with his left eye. (R. at 1573.)[15] Moreover, Plaintiff did not mention an eye impairment or associated functional limitations in any of his application forms or during the relevant administrative hearings. (R. at 401-419, 421-449, 680-690, 713-725.) "[T]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record," *Fleming v. Saul*, No. 19-CV-701, 2020 WL 4601669, at *4 (W.D. Tex. Aug. 10, 2020), and Plaintiff's argument that the ALJ should have included vision limitations in the RFC is meritless.

In sum, even if the ALJ erred in evaluating Plaintiff's eye injury during Step Two, the record supports the determination that his eye impairment was not severe, the ALJ considered the eye impairment in formulating the RFC, and there is no indication Plaintiff suffered from

---

[15] Another VA examiner made similar findings on March 16, 2017, after the relevant time period. (*See* R. at 2519-2526 (finding Plaintiff had "no decrease in visual acuity or other visual impairment" and any eye injury did not impact his ability to work).) Based on this examination, the VA reduced Plaintiff's eye impairment rating from 30% to 0%. (R. at 2031-2032.) Contrary to Plaintiff's contention, there is no indication in the record that Plaintiff had cataract surgery on March 16, 2017; this was the date of the eye examination.

functional limitations associated with his eye. Therefore, Plaintiff failed to meet his burden to show prejudice. *See Keel v. Saul*, 986 F.3d 551, 557 (5th Cir. 2021) (finding any error at Step Two harmless because plaintiff "[did] not meaningfully address" its impact). The case should be dismissed.

## IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 25) be **DENIED**, Commissioner's Motion for Summary Judgment (Dkt. No. 18) be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on May 24, 2021.

Sam S. Sheldon
United States Magistrate Judge